IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GREGORY CONTE, *et al.*,

        **Plaintiffs,**

v.                                                                   Civil Action No. 3:19cv575

COMMONWEALTH OF
VIRGINIA, *et al.*,

        **Defendants.**

## MEMORANDUM OPINION

Plaintiffs Gregory Conte and Warren Balogh (collectively, "Plaintiffs"), acting *pro se*, bring this action against sixteen defendants (collectively, "Defendants"). (Compl., ECF No. 1.)

This matter comes before the Court on four motions challenging venue in this Court (collectively, the "Venue Motions"):

(1)    Defendant Al Thomas Jr.'s Motion To Dismiss Pursuant To Rule 12(b)(3), Or In The Alternative, Transfer Venue Pursuant To 28 U.S.C. § 1404(a), (ECF No. 8);

(2)    Defendants City of Charlottesville and Charlottesville Police Department's (the "Charlottesville Defendants") Motion To Dismiss Pursuant To Rule 12(b)(3), Or In The Alternative, Transfer Venue Pursuant To 28 U.S.C. § 1404(a), (ECF No. 14);

(3)    Defendants Commonwealth Of Virginia, Virginia State Police, Terence R. McAuliffe, Steven Flaherty, Becky Crannis-Curl, and Brian Joseph Moran's (collectively, the "Commonwealth Defendants") Rule 12(b)(3) Motion To Dismiss, Or In The Alternative, Transfer Venue Pursuant To 28 U.S.C. § 1404(a), (ECF No. 18); and,

(4)    Defendant Wes Bellamy's Rule 12(b)(3) Motion To Dismiss, Or In The Alternative, Transfer Venue Pursuant To 28 U.S.C. § 1404(a), (ECF No. 26).

Plaintiffs responded to the Venue Motions in a single filing (the "Response"), (ECF No. 35),[1] and Thomas, the Charlottesville Defendants, the Commonwealth Defendants, and Bellamy replied, (ECF Nos. 39, 42, 45, 46). These matters are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[2]

For the reasons that follow, the Court will grant in part and deny in part the Venue Motions.[3] (ECF Nos. 8, 14, 18, 26.) The Court declines to dismiss the case pursuant to Rule 12(b)(3), but will transfer the case from the Eastern District of Virginia (or the "Eastern District") to the Western District of Virginia (or the "Western District") pursuant to 28 U.S.C. § 1406(a).[4]

---

[1] Each of the four motions included a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). The Complaint brings counts for violations of Plaintiffs' rights arising under the First and Fourteenth Amendments to the United States Constitution as well as 18 U.S.C. § 1962, and 42 U.S.C § 1983.

[3] Thomas, the Charlottesville Defendants, the Commonwealth Defendants, and Bellamy filed five additional motions to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF Nos. 10, 16, 21, 23, 28.) Plaintiffs responded in two filings. (ECF Nos. 36, 37.) Because the Court will grant in part the Venue Motions and transfer this action to the Western District of Virginia, the Court will not resolve the dismissal motions.

[4] Title 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

2

## I. Factual and Procedural Background

### A. Factual Background

The Court recounts the facts, as it must for these motions, viewed in the light most favorable to Plaintiffs.[5] "This case concerns Plaintiffs' attendance and Defendants' involvement in the August 12, 2017 Unite the Right ("UTR") [R]ally at and around Lee Park in Charlottesville, Va." (Compl. ¶ 2, ECF No. 1) Plaintiffs state that they, along with other UTR demonstrators, attended the rally "to engage in expressive political activity in opposition to a proposal by the Charlottesville City Council to remove the statue of Confederate General Robert E. Lee from Lee Park." (*Id.* ¶ 23.) Despite the allegedly lawful nature of the UTR Rally, "Defendants intentionally encouraged and facilitated mob violence by counter-protestors against lawful UTR demonstrators." (*Id.* ¶ 3.) As a result of this "mob" violence, Plaintiffs claim violations of their "constitutional rights to free speech and assembly, due process, and equal protection of the laws." (*Id.*)

Plaintiffs' Complaint outlines in depth the events of August 12, 2017—the date of the UTR Rally. On that date, Plaintiffs allege that "counter-protestors including large numbers of 'Antifa' rallied on Market Street right outside Lee Park, where UTR was lawfully permitted." (*Id.* ¶ 33.) When UTR "attendees tried to pass," the "Antifa locked arms and attacked with fists, poles, hammers, and other weapons" and violence broke out between UTR protestors and counter-protestors. (*Id.* ¶ 34.)

Plaintiffs allege that law enforcement officers around Lee Park allowed the violence to break out, thereby allowing counter-protestors and the so-called Antifa to exercise a "heckler's

---

[5] "In assessing whether there has been a *prima facie* venue showing, [courts] view the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (citations omitted).

3

veto" and disrupt their lawful gathering. (*Id.* ¶¶ 43, 47, 51, 52, 65.) For instance, Plaintiffs assert that "Chief Thomas and Lt. Crannis-Curl were present in supervisory and/or final decision making capacities." (*Id.* ¶ 36.) According to Plaintiffs, after being advised that fighting had broken out, Chief Thomas stated "[l]et them fight, it will make it easier to declare an unlawful assembly." (*Id.* ¶ 38.) Similarly, Lt. Crannis-Curl allegedly "refused to send 'arrest teams' into the street and effectively communicated this order to all [Virginia State Police] under her command." (*Id.* ¶ 43.) Plaintiffs assert that despite pleas to mitigate the violence "officers stood in silence staring at the results of this heckler's veto in progress." (*Id.* ¶ 47.)

Eventually, law enforcement declared the gathering in Lee Park an unlawful assembly, and Virginia State Police "advanced with riot shields and batons on Plaintiffs and other lawfully permitted demonstrators." (*Id.* ¶ 48.) During this action, Balogh asserts that he was "exposed to the chemical 'pepper spray' like substance deployed by the police" and "suffered temporary loss of vision" as well as other symptoms in the days following the UTR Rally. (*Id.* ¶ 54–55.) Shortly after leaving the park, Balogh was also "struck by a masked attacker wielding a stick like weapon from behind in the arm." (*Id.* ¶ 56.) As a result of the dispersal, Plaintiffs assert that "UTR demonstrators were unable to peacefully rally, hear any speakers, or engage in other lawful political speech or expressive activity." (*Id.* ¶ 50.)

Conte, a resident of Maryland, and Balogh, a resident of Pennsylvania, bring this action against sixteen (16) defendants. (*Id.* ¶¶ 4–5.) Ten (10) defendants have made an appearance and filed the above motions pending before this Court (the "Appearing Defendants").[6] The

---

[6] The Appearing Defendants are: (1) the Commonwealth of Virginia; (2) Terence R. McAuliffe ("the Governor of Virginia"); (3) the Virginia State Police; (4) Steven Flaherty ("a

Complaint also brings claims against Edward Gorcenski, Seth Wispelwey, Dwayne Dixon, Daryl Lamont Jenkins, and Lacy MacAuley, naming them as "Antifa leader[s] who w[ere] present at the rally of August 12, 2017." (*Id.* ¶¶ 17–21.) The Complaint alleges that Gorcenski and Wispelwey are residents of Virginia; Dixon is a resident of North Carolina; Jenkins is a resident of New Jersey; and MacAuley is a resident of the District of Columbia. (*Id.*) The Complaint also brings claims against Michael Signer, the former Mayor of Charlottesville.[7] (*See* ECF No. 5.)

B. **Procedural History**

On August 12, 2019, Plaintiffs filed their Complaint against Defendants.[8] (*See* ECF

---

Colonel in the Virginia State Police"); (5) Becky Crannis-Curl ("a Lieutenant in the Virginia State Police"); (6) Brian Joseph Moran ("Secretary of Public Safety and Homeland Security for Virginia"); (7) the City of Charlottesville; (8) Wes Bellamy ("the Vice Mayor of Charlottesville, Va"); (9) the Charlottesville Police Department; and, (10) Al Thomas Jr ("the Chief of Police of the City [of Charlottesville]"). (Compl. ¶¶ 6–12, 15–16, ECF No. 1.) All titles reflect the positions held by the Defendants on August 12, 2017—the date on which the events underlying the claims in the Complaint occurred. McAuliffe, Flaherty, Crannis-Curl, and Bellamy are named in their individual capacities. (*Id.* ¶¶ 7, 9, 10, 14.) Thomas is named in his individual and official capacity, (*id.* ¶ 16), and the Complaint does not specify in what capacity it brings suit against Moran, (*id.* ¶ 11).

Plaintiffs did not provide addresses for four defendants and summons therefore did not issue for them: Edward Gorcenski, Dwayne Dixon, Daryl Lamont Jenkins, and Lacey Macauley. Two (2) defendants were issued summonses but have not yet made an appearance in this Court: Michael Signer, (the "Mayor of Charlottesville, Va"), and Seth Wispelwey.

[7] On November 12, 2019, the Court granted Plaintiffs' Motion to Extend Time for Service, (ECF No. 3), and ordered that service must be issued before February 12, 2020. (Nov. 12, 2019 Order, ECF No. 4.)

[8] The Court notes that in their Eastern District of Virginia Local Rule 83.1 Certification, Plaintiffs disclose that attorney Augustus Sol Invictus "prepared or assisted" them in preparation of their Complaint. (Compl. Ex. 1 83.1 Certification, ECF No. 1-1.) Under Local Rule 83.1(M)(1),

> [a]ny attorney who prepares any document that is to be filed in this Court by a person who is known by the attorney, or who is reasonably expected by the

No. 1.) On March 3, 2020, the Appearing Defendants filed their Venue Motions. (ECF Nos. 8, 14, 18, 26.) On June 22, 2020, the Plaintiffs timely responded to the Venue Motions.[9]

The Complaint bring six counts as follows:

**Count I:** Defendants "deprived Plaintiffs of their right to freedom of speech, their right to freedom of assembly, and their right to petition the Government" in violation of the First Amendment[10] and 42 U.S.C. § 1983,[11] (Compl. ¶ 62);

**Count II:** Defendants denied Plaintiffs "the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth

---

attorney, to be proceeding *pro se*, shall be considered to have entered an appearance in the proceeding in which such document is filed and shall be subject to all rules that govern attorneys who have formally appeared in the proceeding.

E.D. Va. Loc. Civ. R. 83.1(M)(1). Because the Court will transfer this matter to the Western District of Virginia, it will not make Attorney Invictus counsel of record pursuant to this Court's Local Rules.

[9] Plaintiffs' responses were initially due on March 24, 2020. However, due to the COVID-19 pandemic, Chief U.S. District Judge Mark S. Davis issued General Orders 2020-03 and 2020-07 which, among other actions, each granted fourteen-day extensions of time for responsive pleadings. In addition to those extensions, the Court granted Plaintiffs two thirty-day extensions of time to respond to the Venue Motions and Motions to Dismiss, making Plaintiffs' ultimate deadline to respond June 22, 2020. (Apr. 21, 2020 Order, ECF No. 32; May 22, 2020 Order, ECF No. 34.)

[10] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST, amend. I.

[11] Title 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

|  |  |
|---|---|
|  | Amendment to the United States Constitution[12] and . . . § 1983," (*id.* ¶ 70); |
| **Count III:** | Defendants Thomas, Crannis-Curl, Flaherty, and Moran were "deliberately indifferent to the constitutional rights of the plaintiffs" and are thereby subject to supervisory liability under § 1983, (*id.* ¶ 77); |
| **Count IV:** | The Commonwealth Defendants, the Charlottesville Defendants, Signer, and Bellamy's "failure to train Virginia State and Charlottesville police officers amounted to deliberate indifference, at best, and willful, malicious harm, at worst, to the rights of Plaintiffs" and those defendants are therefore subject to a failure to train claim under § 1983, (*id.* ¶¶ 80, 82); |
| **Count V:** | Defendants engaged in "a pattern of racketeering activity . . . for the unlawful purpose of intentionally depriving the Plaintiffs of their constitutional[] and property rights" in violation of 18 U.S.C. § 1962(c),[13] (*id.* ¶ 93); |
| **Count VI:** | Defendants "intentionally conspired and agreed to acquire or maintain an interest in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(d),[14] (*id.* ¶ 108.) |

Plaintiffs seek declaratory relief, compensatory damages, punitive damages, costs and reasonable attorneys' fees, and prejudgment interest. (*Id.* 23.)

---

[12] The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST, amend. XIV, § 1.

[13] Title 18 U.S.C. § 1962(c) declares that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[14] Title 18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

## II. Improper Venue

The Court declines to dismiss the case pursuant to Rule 12(b)(3), but will transfer the case to the Western District of Virginia pursuant to 28 U.S.C. § 1406(a). Under Rule 12(b)(3), § 1406(a), and 28 U.S.C. § 1391, the Richmond Division is an improper venue for this action. Moreover, pursuant to § 1406(a), the interest of justice would be served by transferring the case to the Western District of Virginia

### A. Legal Standards: Improper Venue

#### 1. Legal Standard: Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). The "plaintiff bears the burden of establishing that venue is proper." *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 925 (E.D. Va. 2017) (citations omitted). Plaintiff need "make only a *prima facie* showing of proper venue in order to survive a motion to dismiss." *Aggarao*, 675 F.3d at 366 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). In determining whether a plaintiff has met this standard, "the court is permitted to consider evidence outside the pleadings." *Id.* (citing *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). The Court should "view the facts in the light most favorable to the plaintiff." *Id.* at 366 (citing *Glob. Seafood Inc. v. Bantry Bay Mussels, Ltd.*, 659 F.3d 221, 224 (2d Cir. 2011)).

#### 2. Legal Standard: 28 U.S.C. § 1406(a)

Title 28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). When deciding whether to transfer or dismiss, "district courts generally

8

favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants." *Symbology Innovations, LLC,* 282 F. Supp. 3d at 935 (internal citations omitted). "The analysis of whether a transfer is 'in the interest of justice' is the same under section 1404(a) as it is under section 1406(a)." *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir. 1993) (internal citations omitted).

The "interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case." *Wenzel v. Knight*, No. 3:14cv432, 2015 WL 222179, at *4 (E.D. Va. Jan. 14, 2015) (internal quotations omitted). Courts consider several factors when weighing the interest of justice. In addition to related actions, a court can weigh docket conditions and the so-called First to File Rule.[15] *See Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 723–25 (E.D. Va. 2005). Courts may also consider their "familiarity with applicable law . . . access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Wenzel,* 2015 WL 222179, at *3 (citations omitted). When considering the interest of justice, courts should seek to promote judicial economy and avoid "inconsistent judgments" in order to maintain system integrity. *Samsung Elecs. Co.,* 386 F. Supp. at 721.

### 3. Legal Standard: Venue

The general venue statute, 28 U.S.C. § 1391, provides:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[15] The First to File Rule provides that when "multiple suits are filed in different [f]ederal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Wenzel,* 2015 WL 222179, at *5 (internal citations omitted).

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

### B. The Eastern District of Virginia Is an Improper Venue Because Some Defendants Reside Outside of Virginia and the Events and Omissions Giving Rise to Plaintiffs' Claims Did Not Occur Within This District

Plaintiffs have not made a *prima facie* showing that venue is proper in the Eastern District. First, venue cannot arise under § 1391(b)(1) because several Defendants are not residents of Virginia. *See* 28 U.S.C. § 1391(b)(1) ("[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). As Plaintiffs recognize: (1) "Dwayne Dixon is a citizen of . . . North Carolina"; (2) "Dayrl Lamont Jenkins is a citizen of . . . New Jersey"; and, (3) "Lacy MacAuley is a citizen of . . . the District of Columbia." (Compl. ¶¶ 19–21.)

Second, venue cannot arise under § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in the Eastern District of Virginia. *See* 28 U.S.C. § 1391(b)(2) ("[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). As the Plaintiffs' Complaint begins: "This case concerns Plaintiffs' attendance and Defendants' involvement in the August 12, 2017 Unite the Right ("UTR") [R]ally at and around Lee Park in Charlottesville, Va." (Compl. ¶ 2.) Lee Park, and the City of Charlottesville, lie exclusively within the jurisdiction of the Western District of Virginia. Indeed, other than noting that the Virginia State Police "is . . . headquartered in Richmond," the Complaint includes no reference

to Richmond or any specific event taking place within the Eastern District of Virginia. (*Id.* ¶ 8.) Instead, the Complaint focuses almost exclusively on events occurring in Charlottesville, Virginia on or around August 11 and 12, 2017. (*See id.* ¶¶ 23–60.)

In response to the Venue Motions, however, Plaintiffs argue that venue is proper in the Eastern District and the Richmond Division because the Commonwealth's planning leading up to the UTR Rally "took place entirely from the Governor's mansion and other Commonwealth command centers in Richmond." (Resp. 3, ECF No. 35.) In support of this contention, Plaintiffs quote large sections of the "Heaphy Report" prepared after the UTR Rally "at the request of the City of Charlottesville." (*Id.*) But these arguments do not alter the outcome of the venue analysis. Even considering the Heaphy Report, and viewing the facts in the light most favorable to Plaintiffs, their claims' "connections to [Charlottesville] so far predominate over those in [Richmond] as to make it impossible to conclude that a 'substantial part of the events or omissions giving rise to the claim' occurred in this district." *MTGLQ Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561, 566 (D. Md. 2003).

While Plaintiffs reference several conversations concerning the UTR Rally involving state officials in Richmond, Plaintiffs' Complaint does not do more than mention those conversations, instead focusing almost exclusively on the events occurring in Charlottesville on or immediately before August 12, 2017. The meetings Plaintiffs cite that purportedly occurred in Richmond cannot fairly be said to give "rise to [Plaintiffs'] claim[s]" when Plaintiffs do not mention them in their Complaint. 28 U.S.C. § 1391(b)(2). Furthermore, some of the events that Plaintiffs raise to argue that venue lies in Richmond took place in

11

Charlottesville.[16] Because the events and omissions giving rise to Plaintiffs' claims, as reflected in their Complaint, occurred almost entirely in the Western District of Virginia, venue does not lie in the Eastern District of Virginia under § 1391(b)(2).

Third, no venue can arise under § 1391(b)(3) because, as will be discussed below, the action could have properly been brought in the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(3).

### C. Because This Court Is an Improper Venue and This Case Could Have Been Brought in the Western District of Virginia, the Interest of Justice Is Served by Transferring this Case to the Western District

Having concluded that venue is improper in the Eastern District of Virginia, the Court must consider whether to dismiss or where to transfer the action. The Court, considering the factors outlined for transfer under 28 U.S.C. § 1406(a), finds it in the interest of justice to transfer the case to the Western District of Virginia where it originally could have been brought. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

---

[16] For example, Plaintiffs cite a portion of the Heaphy Report stating:

> VSP had written its own detailed plan for VSP resources on August 12. No one in CPD was aware of that plan, and the plan was never shared with anyone at CPD. In fact, CPD learned of the VSP plan only after copies were accidentally left behind in a staging area after August 12. Captain Mitchell told us he was bothered by VSP's decision not to share their plan with CPD, as he would have reviewed it to ensure there were no conflicts between the City's and State's efforts.

(Resp. 5.) This portion of the Heaphy Report does not reference Richmond, but refers to CPD's awareness of VSP's actions, the fact that the "plan" was left in Charlottesville, and the effect that the lack of coordination between officials had on an official in Charlottesville. (*See id.*) To the extent this portion of the Heaphy Report reflects events or omissions giving rise to Plaintiffs' claims, those events or omissions took place in Charlottesville.

12

### 1. The Plaintiffs' Claims Could Have Been Brought in the Western District of Virginia because Venue and Personal Jurisdiction Are Proper There

The Court finds transfer to the Western District of Virginia appropriate because it meets the two requirements for transfer under § 1406(a). First, a substantial amount of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District, meaning venue is proper there. Second, the Defendants are subject to personal jurisdiction in the Western District.

First, venue is appropriate in the Western District of Virginia. "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The acts that give rise to this suit took place primarily in Charlottesville, Virginia, a city within the Western District of Virginia. Indeed, Plaintiffs' Complaint begins by stating that "[t]his case concerns Plaintiff's attendance and Defendants' involvement in the August 12, 2017 . . . ("UTR") [R]ally at and around Lee Park in Charlottesville, Va . . . ." (Compl. ¶ 2.) The Complaint then outlines in depth substantial events taking place in Charlottesville at the UTR Rally on that day, including Plaintiffs' claims that they were prevented from speaking freely, exposed to dangerous chemicals, physically assaulted, and denied safe exit from the violence within the area. (*Id.* ¶¶ 98–104.) All of these events, and Plaintiffs' claimed injuries, occurred in Charlottesville on April 12, 2017.

Second, the Western District of Virginia could exert personal jurisdiction over all Defendants by virtue of Virginia's long-arm statute. Under Federal Rule of Civil Procedure 4(k)(1)(A), "[a] federal district court may only exercise personal jurisdiction over a foreign [defendant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the

Fourteenth Amendment." *Consulting Eng'rs. Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long-arm statute allows courts to "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [c]ausing tortious injury by an act or omission in this Commonwealth." Va. Code § 8.01-328.1(A)(3).

Here, Plaintiffs allege a number of tortious injuries which they say resulted in injury and denial of constitutional rights, occurring in Charlottesville in the Western District. For example, in Count V, Plaintiffs allege that Defendants "utilized force and the threat of force to deprive Plaintiffs of their Constitutional rights, expose their persons to harm, and unlawfully abrogate their permit to assemble." (Compl. ¶ 94.) Similarly, in Count VI, Plaintiffs allege that they "were deprived of their right to speak freely, were harassed, assaulted, and insulted, were placed in danger of severe bodily injury." (*Id.* ¶ 109.) Under the Virginia long-arm statute, the Western District of Virginia could exercise personal jurisdiction over Defendants for the tortious injuries they allegedly caused in Virginia.

For the above reasons, the Court finds that both venue and personal jurisdiction would have been proper in the transferee forum. *See Symbology Innovations, LLC*, 282 F. Supp. 3d at 936. Plaintiffs' claims could have properly been brought in the Western District of Virginia.

### 2. The Interest of Justice Favors Transfer to the Western District of Virginia

Finally, the Court finds that the interest of justice also favors transfer to the Western District of Virginia over dismissal of the action. Transfer to the Western District, rather than dismissal, will save *pro se* Plaintiffs the cost of refiling their case in a new judicial district.

First, several similar lawsuits to the one at bar have been filed in the Western District. The existence of these related actions favor transfer. "Judicial economy and the interest of

justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case." *Wenzel*, 2015 WL 222179, at *4 (internal quotations omitted). United States District Judge Norman K. Moon of the Charlottesville Division has already fully adjudicated two cases involving claims arising from the August 12, 2017 UTR Rally. *See Turner v. Thomas*, 313 F. Supp. 3d 704 (W.D. Va. 2018); *Kessler v. City of Charlottesville*, No. 3:19cv44, 2020 WL 871484 (W.D. Va. 2020). The claims made by the plaintiffs in those cases bear substantial similarities to the claims brought here. For instance, in *Turner*, the plaintiff alleged that Commonwealth and Charlottesville officials violated his Fourteenth Amendment rights by ordering state and local police to "stand down" at the UTR Rally. 313 F. Supp. 3d at 709–10. Similarly, in *Kessler*, the plaintiffs asserted that the decision to shut down the UTR Rally due to counter-protestors exercising a "heckler's veto" violated their First Amendment rights. 2020 WL 871484 at *1.[17] Clearly, the Western District's "familiarity with [the] applicable law" favors transfer." *Wenzel*, 2015 WL 222179, at *3.

The Western District of Virginia has thus "already committed judicial resources to the contested issues and is familiar with the facts of the case." *Id.* at *4 (internal quotations omitted). Transferring the case there would promote judicial economy while limiting the

---

[17] In their Response, Plaintiffs request that, should the Court transfer the case to the Western District of Virginia, it "stipulate that [the case] be brought before a judge other than [Judge] Norman Moon." (Resp. 9.) In support of this request, Plaintiffs assert that Judge Moon's law clerks have various conflicts of interest regarding litigation involving the UTR Rally, and that Judge Moon has previously granted a motion "for recusal of [two of his] law clerks" in related litigation. (*Id.* 8.) They further argue that one of Judge Moon's other law clerks "represented the Israeli government" thus raising a potential conflict of interest as "Plaintiffs strongly oppose the Israeli Government's policies." (*Id.* 9–10.)
This Court lacks the authority to either stipulate that a case be brought before a certain judicial officer upon transfer or to preemptively cast judgment on another district judge's law clerks' potential conflicts of interest. Plaintiffs may raise any concerns addressing the assignment of their case in the Western District of Virginia, the proper venue for this action.

15

potential for "inconsistent judgments." *Samsung Elecs. Co.*, 386 F. Supp. 2d at 721. Even considering docket conditions and the First to File Rule, transfer should commence. *See id.* at 723–25. "[A]ccess to premises that might have to be viewed" clearly favors transfer. *Wenzel*, 2015 WL 222179 at *3. Indeed, the overwhelming predomination of the Western District's connection to the events and charges outlined in Plaintiffs' Complaint outweighs any basis to retain this Complaint in the Eastern District of Virginia. Accordingly, the Court will transfer the action to the Western District of Virginia.

### III. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Appearing Defendants' Venue Motions. (ECF Nos. 8, 14, 18, 26.) The Court will not dismiss the case pursuant to Rule 12(b)(3), but will transfer this case to the Western District of Virginia pursuant to § 1406(a). The Court takes no action on the Appearing Defendants' Motions to Dismiss. (ECF Nos. 10, 16, 21, 23, 28.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: July 9, 2020
Richmond, Virginia